IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARY ELLEN GLASCO, Personal Representative of the Estate of Lewis Avery Roberts, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-04-19-L |
| THE CITY OF OKLAHOMA CITY; BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY; JOHN WHETSEL, as ADMINISTRATOR OF THE OKLAHOMA COUNTY JAIL; AVEN BULL, Individually and in his official capacity; BRENT BERTRAND, Individually and in his official capacity; SKIPPER DAVIDSON, Individually and in his official capacity; JERRY HAYNES, Individually and in his official capacity; KENNETH ALLSEN, Individually and in his official capacity; JOHN STIMSON, Individually and in his official capacity; CLIFF KINSLER, Individually and in his official capacity; AARON CYPERT, Individually and in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**O R D E R**

Plaintiff, Mary Ellen Glasco, Personal Representative of the Estate of Lewis Avery Roberts, Deceased,[1] brings this civil rights action pursuant to 42 U.S.C. §

---

[1] On August 24, 2004, the court granted plaintiff leave to file a Second Amended Complaint, naming eight individuals in place of defendants previously identified only as "John Does." Inexplicably, when the Second Amended Complaint was filed on August 31, 2004, the new defendants were identified in the body of the pleading, however, the caption was not amended to name them. Furthermore, the body of the Second Amended Complaint identifies plaintiff as Mary Glasco, the Personal

1983, alleging that Mr. Roberts died as a result of excessive physical force used against him while he was in the custody at the Oklahoma County Detention Center ("OCDC") in August of 2002.

The Second Amended Complaint alleges that on or about August 28, 2002, Roberts was detained and arrested by Oklahoma City Police Officers. Roberts was then transported to the OCDC and placed in the custody of employees of Oklahoma County. Plaintiff alleges that, either during or after the transfer of custody, an altercation between Roberts and the defendant officers began. The Second Amended Complaint alleges that Roberts, while handcuffed, was repeatedly hit and kicked in a manner designed to inflict wanton pain and suffering and that the force used was beyond that which was necessary to restore order. Plaintiff alleges that defendant officers attempted to subdue Roberts by using pepper spray and/or mace and physical force. Plaintiff alleges that Roberts was then taken to a group shower facility where he was stripped and thrown into a cold shower and beaten further. Plaintiff claims that Roberts was restrained by defendant officers in a manner which prevented Roberts from being able to breathe and that he was restrained in a manner designed to inflict wanton pain

---

Representative of the Estate of Lewis Avery Roberts, deceased, although the caption names two plaintiffs, namely, "The Estate of Lewis Avery Roberts, Deceased, and Mary Ellen Glasco, Individually and as Parent and Next of Kin of Lewis Avery Roberts, Deceased." The court agrees with defendant City of Oklahoma City that, pursuant to Berry v. City of Muskogee, 900 F.2d 1489, 1506-07 (10th Cir. 1990), the proper plaintiff is the estate. The court finds that the caption in this case should be and is hereby amended to properly identify the plaintiff and defendants. Future filings in this case shall reflect this amendment.

and suffering. Roberts was then transported to St. Anthony Hospital, where he subsequently died. The Second Amended Complaint asserts that at all relevant times, defendant Aven Bull "was acting under the direction and control of the Defendant City of Oklahoma City and was acting pursuant to the official policy, practice or custom of the Defendant City of Oklahoma City." Second Amended Complaint, ¶¶ 12-19, 21 ("Factual Background").

Plaintiff alleges that prior to the incident involving Roberts, City "had learned of several previous incidents involving the use of unnecessary and unreasonable force against arrestees by the named Defendant Officers and other unnamed, non-party Oklahoma City Police Officers." Second Amended Complaint, ¶ 31. Plaintiff asserts that the City "took no action to discipline" the defendants and other unnamed Oklahoma City Police Officers, "or to order them not to repeat such incident, thus tacitly authorizing such conduct." Plaintiff alleges that if the City had taken such remedial action, the beating of Roberts would not have occurred. Second Amended Complaint, ¶ 32.

Paragraph 33 of the Second Amended Complaint alleges that the City "was aware of a pattern of excessive force by City Police Officers" and "was aware that Oklahoma City's policies regarding the discipline of officers accused of excessive force was so inadequate, it was obvious that a failure to correct said policies caused the excessive force to be used on Roberts . . .". Plaintiff alleges that the City "failed to instruct, supervise, control and discipline on a continuing basis, the

Defendant Officers in their duties to refrain from unlawfully, sadistically and maliciously assaulting and beating arrestees and otherwise using unreasonable and excessive force against individuals." Second Amended Complaint, ¶ 34. Plaintiff alleges that the City "had knowledge, or had it diligently exercised its duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge of the wrongs which were done, as therefore alleged, and were about to be committed." Plaintiff asserts that the City "has the power to prevent or aid in preventing the commission of said wrongs and could have done so by reasonable diligence and intentionally, knowingly or recklessly failed or refused to do so." Second Amended Complaint, ¶ 35. Plaintiff alleges that as a "direct and proximate result" of the acts of the City, Roberts suffered physical injury, medical expenses, lost wages, emotional distress, and wrongful death in connection with the deprivation of his constitutional rights. Second Amended Complaint, ¶ 36.

This matter is before the court on Defendant City of Oklahoma City's ("City's") Motion for Summary Judgment **[Doc. No. 74]**. The court has carefully reviewed the submissions of the parties. Based upon this review, the court concludes that City is entitled to summary judgment on plaintiff's claims.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509, 91 L. Ed. 2d 202 (1986).  The moving party bears the initial burden of showing that there is an absence of any issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324, 106 S. Ct. at 2553; Applied Genetics Int'l. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The non-moving party must point to specific facts, "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves," to avoid summary judgment.  Celotex, 477 U.S. at 324.  Such evidence includes reference to affidavits, deposition transcripts, or specific exhibits.  Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).  The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift

from the nonmovant to the district court.  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998).  Although the district court has the discretion to go beyond the referenced portions of the supporting material, it is not required to do so.  Id.

In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.  Bryant v. O'Connor, 848 F.2d 1064, 1067 (10th Cir. 1988).  The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party.  Allegations alone will not defeat summary judgment.  Cone v. Longmont United Hosp. Ass'n., 14 F.3d 526, 530 (10th Cir. 1994).

It is well settled that municipalities do not incur liability under a theory of *respondeat superior* in a suit pursuant to § 1983.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 695 (1978).  To hold a municipality liable under § 1983, a plaintiff must show harm that is the result of official policy or custom, made by policy makers or "those whose edicts or acts may fairly be said to represent official policy."  Id.  When a municipality's failure to train police officers demonstrates a deliberate indifference to the rights of citizens, then the city may be held to have caused the injury and may be held liable.  City of Canton v. Harris, 489 U.S. 378, 388 (1989).

In order to establish a failure to train case, the plaintiff must satisfy the following requirements: (1) police action violated the plaintiff's constitutional rights; (2) the injury arose under circumstances which constitute a usual and recurring situation with which police officers must deal; (3) there is a direct causal link between the alleged constitutional deprivation and the inadequate training; and (4) the city's failure to train demonstrates deliberate indifference to the constitutional rights of its citizens. <u>Zuchel v. City and County of Denver</u>, 997 F.2d 730, 734-35 (10th Cir. 1993). Deliberate indifference means more than simple or even heightened negligence. <u>Bd. of the County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 407 (1997). Deliberate indifference requires "an act or omission purposefully committed by a person who must have realized that the conduct was unnecessarily dangerous or which conduct was done heedlessly or recklessly, without regard to the consequences, or without regard to the rights and safety of others." <u>Zuchel</u>, 997 F. 2d at 735. There must be a direct causal link between the municipal action and the specific constitutional deprivation, such that the municipality, through its deliberate conduct, is the moving force behind the injury alleged. <u>Brown</u>, 520 U.S. at 404. A finding of deliberate indifference requires a showing that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." <u>City of Canton</u>, 489 U.S. at 390. The deliberate

indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. Carr v. Castle, 337 F.3d 1221, 1229 (10th Cir. 2003), *quoting* Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998). In most instances, notice can be established by proving the existence of a pattern of tortious conduct. Id. However, in a narrow range of circumstances, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations. Id. A failure to supervise claim requires essentially the same showing of deliberate indifference and direct causation as a failure to train claim. Sutton ex rel. Sutton v. Utah State Sch. for the Deaf and Blind, 173 F.3d 1226, 1240 (10th Cir. 1999).

In support of its Motion for Summary Judgment, City provided a Statement of Material Facts Not in Dispute, which includes the following facts relating to the City's training of its police officers, including defendant Aven Bull (citations to the record, some parenthetical information, and footnotes omitted):

1. In 1985, in response to the United States Supreme Court's decision in Tennessee v. Garner, 471 U.S. 1 (1985), the City Council of the City enacted

OCPD Policy 9.03 to conform the OCPD policy on the use of deadly force to the constitutional standard.

 2. This policy, and the City's training of its police officers on the use of force, both deadly force and non-deadly, has been upheld in cases litigated in this District, including but not limited to, <u>Rios v. City of Oklahoma City</u>, CIV-87-2383-T (deadly force), and <u>Franklin v. Thompson, et al.</u>, CIV-89-1492 (non-deadly force). Neither of these orders was appealed by the respective plaintiffs. In <u>Franklin</u>, the plaintiff appealed the jury verdict in favor of the officer only, which was upheld. <u>Franklin v. Thompson</u>, 981 F.2d 1168 (10th Cir. 1992). In <u>Carr v. Castle</u>, 337 F.3d 1221, 1228 (10th Cir. 2003), the Tenth Circuit Court of Appeals upheld the City's written policy on the use of deadly force. In <u>Grigsby v. City of Oklahoma City</u>, CIV-02-1220-F, Judge Friot upheld the City's training on positional asphyxia and hog-tying. This plaintiff did appeal the order granting the City summary judgment, however, the appeal was dismissed when his attorney failed to file a brief.

 3. Defendant Bull was employed by the City as a police recruit on November 1, 1982. From then until March 31, 1983, or for a total of 760 hours, defendant Bull received police training at the OCPD Training Academy. Defendant Bull's class received 76 hours of patrol procedure training and 58 hours of self-defense training, both of which would include training on the proper use of force and 40 hours of training on first aid/C.P.R. At the time of his training,

state law required only 300 hours of police training before a recruit received a police commission.

    4. During his OCPD academy training, defendant Bull received training on police issues, including but not limited to use of force, self defense and patrol procedures, custody and control and first responder emergency medical services. Further, this officer was also trained on the then-existing OCPD policies and procedures.  Defendant Bull's academy training occurred prior to the United States Supreme Court's decision in <u>Tennessee v. Garner</u>, 471 U.S. 1 (1985) and <u>Graham v. Conner</u>, 490 U.S. 386 (1989).

    5. After graduation from OCPD Recruit Class 93, Defendant Bull and all others rode with an experienced police officer for four months for further training.

    6. All police officers receive a copy of the OCPD Operations Manual when reissued and all updates thereto as issued.  On February 15, 2001, Bull received the Fourth Edition Operations Manual, the manual in effect at the time of this incident.  This incident was investigated, at least as far as the OCPD involvement, under Procedures 150.0, 150.01, and 150.20-150.34.  There was no review of the use of force because Mr. Roberts died while in the custody of detention officers of the Oklahoma County Sheriff's Office and not due to the involvement of OCPD officers.

    7. All police officers receive annual in-service training on a variety of police subjects, including but not limited to handling the mentally ill and use of force

issues.  In 1992, defendant Bull received 80 hours of instruction in the custody and control instructor school.

      8.  In September, 1992, in the OCPD Training Bulletin, an article was published concerning the potential danger of hog-tying and positional asphyxia.

      9.  In a special 1993 issue of the OCPD Training Bulletin, the September 1992 article was republished.

      10.  In the annual OCPD in-service training for either 1994 or 1995, a class was given on custody and control, which included a section on In-Custody Death Conditions.  The potential dangers of positional asphyxia were discussed.

      11.  In 2001, the Tenth Circuit Court of Appeals decided the case of Cruz v. City of Laramie, 239 F.3d 1183, 1188 (10th Cir. 2001).  Because of this decision, the OCPD purchased hobble restraints and officers were trained in the use of these restraints.  The concern was the potential for positional asphyxia.

     In response to these facts, plaintiff admitted the first two and stated it was "without sufficient information to admit or deny the City's proposition" and therefore "denied" the City's facts numbered 3 to 11.  Of course, such a statement is insufficient at the summary judgment stage to controvert a supported statement of fact.  Thus, the court finds that the City's facts in paragraphs 1 to 11 are either admitted or properly deemed admitted due to plaintiff's failure to specifically controvert them.

     The City provides a quite lengthy series of facts relating to the night Mr.

Roberts died. This recitation reveals that Roberts advised the officers that he had taken cocaine and that it took several officers to restrain Roberts due to his strength and combativeness. There was evidence that Roberts was suicidal. The City's version of facts is largely admitted by plaintiff and need not be repeated. However, while the City argues that the facts show that the involvement of OCPD officers ended with defendant Bull leaving the cell after placing his foot on Roberts' buttocks to hold him down so that Roberts could be unshackled, plaintiff asserts that OCPD officers admit through their own testimony to not only being present while force was being used against Roberts, but to participating in the use of force against Roberts. Plaintiff argues at p. 12[2] of its response that "[a]t what level they were involved and their liability if any, are questions for the fact finders."

The court observes that mere placement of OCPD officers with Roberts, and even their use of force against Roberts, does not raise an issue of material fact. The question is not whether force was used but whether the officers exceeded constitutional limitations on the use of force. Plaintiff points to no facts that would support a finding that the OCPD officers, including defendant Bull, used unconstitutionally excessive force against Roberts.

However, even if the court were to assume that plaintiff has raised a

---

[2] The court has assigned this page reference since Plaintiff's Response brief does not contain page numbers.

sufficient jury question as to the reasonableness of OCPD officers' actions, the court agrees with City that this would not prevent summary judgment in favor of the City.  This is because plaintiff has failed to present evidence of harm that is the result of official policy or custom of the City.  Plaintiff has failed to show a link between the City's use of force policy and the alleged constitutional deprivation.  Plaintiff has failed to show that the training of its officers by the City was inadequate.  Plaintiff does not dispute that the City's written policy and its training of officers on the use of deadly force and non-deadly force have been upheld in cases litigated in this District.  Plaintiff has not identified any other custom or policy that is the cause of constitutional deprivation.  Plaintiff has failed to come forward with any evidence that the City had notice that its actions or failures to act were likely to result in constitutional harm.  Plaintiff has failed to point to any evidence that the City consciously chose to disregard the risk of harm to its citizens.  Plaintiff has come forward with no evidence at the summary judgment stage that could be said to place the City on actual or constructive notice that the asserted failures to train or supervise were substantially certain to result in a constitutional violation.  Despite the relevant and controlling authorities cited by the City in its brief supporting its motion, plaintiff's response does not address them or the elements required to establish liability of the City under § 1983.  Plaintiff's response fails to even include the term "deliberate indifference" – much less demonstrate how plaintiff could factually meet this demanding standard.

As for the requirement of showing that the City's allegedly inadequate training or supervision was a direct causal link of Roberts' injury and death, plaintiff's response also fails.  Plaintiff has identified no facet of the City's training or supervision of its officers that led directly to Robert's injury or death.  Needless to say, plaintiff's bare assertion in its response at p. 12, without citation to any summary judgment evidence, that "a question of fact exists regarding the policy and procedure of the City of Oklahoma City with respect to the handling and transportation [of] arrestees with perceived medical problems as well as questions of fact with regard to custody issues once arrestees arrive at the Oklahoma County Detention Center" falls far short of meeting plaintiff's burden at the summary judgment stage.   As previously stated by the court, the mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party, and allegations alone will not defeat summary judgment.

Finally, the court rejects plaintiff's attempt to manufacture a fact issue by referring to the Report of John Currie, attached as Exhibit 9 to plaintiff's response.[3]   With respect to many of the undisputed facts submitted by the City, plaintiff's response inserts, in a boilerplate fashion, the statement: "Based upon the facts proferred [sic] by Defendant City of Oklahoma City officers used

---

[3] It should be noted that City argues that the Currie Report is "objectionable for a multitude of reasons."  City's Motion for Summary Judgment, p. 10, n. 10.  According to City, the objections need not be resolved because the report fails to support any claim against the City.

illegitimate force and thereby failed to de-escalate the situation.  Officers failed to take control and de-escalate the situation. (See Attached Exhibit 9; Report of John Currie)."  This statement appears approximately 20 times in plaintiff's response to City's statement of undisputed facts.  No specific citation to the multi-page report is provided by plaintiff, however, the court has reviewed the report and has discovered that these words appear in paragraph 4.1 under the heading "Summary of Opinions" on page 4 of the report.  The paragraph states in part that,

> Once Mr. Roberts was handcuffed and the Emergency Medical Services Unit had arrived on scene[,] officers continued to use illegitimate force and thereby failed to de-escalate the situation.  As a result, Mr. Roberts remained agitated, and continued to struggle with officers.  The officers failed to take control of the situation by attempting to calm Mr. Roberts and quell Mr. Roberts's behavior.  The Defendants' actions involving Lewis Avery Roberts (5ft. 3in. - 139 lb. 40 yr. old male) at 2351 W. Park Place, OKC were a gross abuse of this standard of care.

Although this excerpt clearly relates to actions taken at the scene of Roberts' initial arrest, *i.e.*, 2351 W. Park Place, in its response, plaintiff has inserted language from this paragraph in connection with factual statements regarding actions taken later, at the Oklahoma County Detention Center.  Significantly, plaintiff's Second Amended Complaint does not appear to seek damages for events that took place at the scene of Roberts' initial arrest since it alleges in paragraph 1 that: "Plaintiff contends that while in the custody of the Oklahoma County Detention Center, Defendants . . . subjected Lewis Avery

15

Roberts to the use of excessive force resulting in his wrongful death. . .". Opinions of Mr. Currie relating to actions taken at the scene of the initial arrest are clearly irrelevant to actions taken at the Oklahoma County Detention Center and plaintiff's attempt to apply this opinion to unrelated events is ineffective.

Plaintiff's attempt to rely on the Currie Report as evidence of the City's liability is equally ineffective. The City's statement of fact in paragraph 52 is that plaintiff has "no evidence to support any theory of municipal liability as to the City in this case." Plaintiff's response is: "Disputed. (See Report of John Currie; Attached Exhibit 9)." Again, plaintiff fails to specify the portion of the report that could support its response. The court has reviewed the report and finds that it does not specifically address actions or inactions of the City. Although the Report Summary, Section 6.0, includes a statement that the "Detention Officer Defendant's [sic] were deliberately indifferent to their duty to protect" Roberts, this conclusion obviously does not involve the City in any way. The Currie Report refers generally to training, but does not specifically address the training or supervision provided by the City. The Currie Report is insufficient to prevent summary judgment in favor of City. This order need not and does not address any other aspect of the Currie Report or any objection to the report that may be raised by any other party.

Plaintiff has failed to come forward at the summary judgment stage with sufficient evidence to create a genuine issue of material fact concerning the

existence of a policy or custom attributable to the City which was the direct cause of plaintiff's constitutional deprivations, if any. Plaintiff has also failed to demonstrate sufficient proof of deliberate indifference sufficient to impose municipal liability under § 1983 and has failed to demonstrate a direct causal link between the alleged failure to train or supervise and Roberts' injury and death. Therefore, summary judgment is warranted on plaintiff's claims against the City under § 1983. Accordingly, Defendant City of Oklahoma City's Motion for Summary Judgment **[Doc. No. 74]** should be and is hereby **GRANTED.**

It is so ordered this 15th day of August, 2006.

*/s/ Tim Leonard*
TIM LEONARD
United States District Judge